UNITED STATES DISTRICT COURT
STATE OF MINNESOTA

_____

Casey Kucera and John Schneider, as co-trustees for
the-next-of kin of Kathryn Marie Schneider,

                                        Plaintiffs,

v.

Brian Jespersen, in his individual and official
capacity as Sheriff of Koochiching County,
Andy Jespersen, acting in his individual
capacity as a Koochiching County correctional
officer, Dawn Piekarski, acting in her individual
capacity as a Koochiching County correctional
officer, John Does 1-4, acting in their individual
capacities as Koochiching County correctional
officers, and Koochiching County,

                                        Defendants.

Case No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

_____

For their Complaint, Casey Kucera and John Schneider, as co-trustees for the next-of-kin of Kathryn Marie Schneider, state and allege as follows:

1.     This is an action for money damages for the wrongful death of Kathryn Marie Schneider ("Schneider") that occurred on March 25, 2014 and resulted from the deliberate indifference of Koochiching County, the individual Defendants who are correctional employees of Koochiching County acting in their individual capacities at the Koochiching County Jail, and Brian Jespersen, acting in his individual and official capacity as Sheriff of Koochiching County.

2.      The deliberate indifference of Koochiching County, the Koochiching County Sheriff, and the individual Defendants proximately caused Schneider's death, thereby violating her well-settled federal civil rights while acting under the color of state law.

3.      Casey Kucera and John Schneider ("Plaintiffs") were appointed Co-Trustees for the Next-of-Kin of Schneider on June 16, 2014 by Hennepin County District Court Judge Kathleen Sheehy.  Casey Kucera is the parent and natural guardian of Kathryn Schneider's son, Skylar (D.O.B. May 7, 2012).  John Schneider is Decedent's natural father. A copy of that Order, as well as the Oaths and Consents of the Co-Trustees are attached hereto as Exhibit A.

4.      Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Eighth and Fourteenth Amendments to the Constitution, and 28 U.S.C. §§ 1331 and 1343(3).  The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this cause of action.

5.      Schneider was at all times material herein a citizen of the United States and a resident of International Falls, Minnesota.  She was born on March 13, 1986, making her 28-years-old at the time of her death.  She suffered from mental illness, including anxiety, depression and substance abuse/addiction.  Prior to her incarceration at the Koochiching County Jail on March 25, 2014, she had attempted suicide.

6.      Defendant Koochiching County is a "public corporation," which can be sued under Minnesota Statute § 373.01(1).  Koochiching County is, and at all times relevant was, a political entity charged with control and supervision of all personnel of the Koochiching County Jail.

2

7.      Upon information and belief, Defendant Brian Jespersen ("Sheriff Jespersen") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law as the Koochiching County Sheriff.

8.      Defendant Sheriff Jespersen is charged with control and supervision of all security personnel of the Koochiching County Jail and is a policy-maker for Koochiching County with respect to jail and prisoner safety and security.

9.      Upon information and belief, Defendant Andy Jespersen ("A. Jespersen") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law as a correctional officer at the Koochiching County Jail.

10.     Upon information and belief, Defendant Dawn Piekarski ("Piekarski") was at all times material herein a citizen of the United States, a resident of the State of Minnesota, and acting under color of state law as a correctional officer at the Koochiching County Jail.

11.     Upon information and belief, Defendants John Doe 1-4 were at all times material herein, citizens of the United States, residents of the State of Minnesota, and acting under color of state law as correctional officers of the Koochiching County Jail.

## FACTUAL SUMMARY

12.     At approximately 7:13 p.m. on March 25, 2014, Schneider voluntarily checked herself into the Koochiching County Jail because there was a warrant out for her arrest for a Second Degree DUI charge.

13.     At the time of Schneider's arrival at the Koochiching County Jail she was, among other things, obviously intoxicated.

3

14.     Nonetheless, Schneider was admitted to the Jail and changed into jail clothing under the direction of Defendant Piekarski.

15.     At approximately 7:20 p.m., seven minutes after Schneider checked in at the Jail, Piekarski brought her to the common area of "F Block."

16.     Piekarski did not complete the full booking process for Schneider on March 25, 2014, which includes elements essential to prisoner safety and security, to wit: medical screening; mental health screening; and prisoner classification.

17.     Schneider was left locked in F Block, which consisted of a common area and unlocked, unsecured cells 1 and 2, and a shower.

18.     Schneider was never locked into any individual cell.

19.     A video surveillance camera monitored the common area outside F cells 1 and 2, which had a 24 hour clock element on the recorded video.

20.     The 24 hour times included herein are those noted on the surveillance video provided to us and are approximate.  Further, the surveillance video provided to us skips portions of time, accounting for the gaps in time regarding Schneider's movements.

21.     Upon information and belief, at 19:16:30 on the video surveillance of the confined common area outside F Block cells 1 and 2  Schneider enters the cell area with Defendant Piekarski and then is left alone in this large area.

22.     At 19:18:08 Schneider ties the unlocked left cell door open by attaching a garment or towel to the door handle and securing it to the window bars behind the open door in the main area of the cell.

23.     Such inmate action is a security breach in any correctional institution.

4

24.     Schneider makes her first phone call at 19:18:33, which appears to last until 19:20:28.

25.     From approximately 19:20:11-19:28:08, Schneider can be seen moving items in and out of the cells and around the main area, including a mattress and garments.

26.     At 19:31:59 Schneider gets down on the ground at the main entrance to the cell area and appears to be talking through the slot in the door.  The slot appears to open out to a hallway.

27.     At 19:33:23 Schneider gets out paper and a writing utensil and begins writing on the paper.

28.     At 19:34:30 Schneider holds the paper down by the main door and appears to ring a buzzer on the wall by the main entrance to this common area.

29.     From 19:34:58-19:36:05.35 Schneider resumes writing on the paper.

30.     At 19:36:10 Schneider again kneels down by the main door to the common area and appears to be talking through the slot in the door.

31.     At 19:37:35 Schneider resumes writing on the paper.

32.     At 19:38:28 Schneider deposits paper through the slot of the main door.

33.     At 19:40:45 Schneider deposits more paper through the slot of the main door and again rings the buzzer on the wall of the common area.

34.     In response to a written request for these notes written by Schneider, the Koochiching County Sheriff's Office said they had none of them:  "I went through all reports that we have and found no note that was passed.  The notes normally are requests for shampoo, soap, toothpaste and etc.  But we don't have it in the file."

35.     At 19:46:07 Schneider makes a second phone call.

36.     At 19:55:44 Schneider gets off the phone and then appears to pray by the main door to the common area.

37.     At 20:03:48 Schneider makes a third phone call, which appears to last until 20:05:16.

38.     At 20:12:39 Schneider makes a fourth phone call, which appears to last until 20:12:53.

39.     At 20:16:32, approximately one hour after Schneider was locked in the common area, the main door to the area opens and closes.  The individual who opens and closes cannot be seen or identified by the video surveillance.  To Plaintiffs' knowledge, Piekarski had a key to open the door to the common area of F Block where Schneider was being held.

40.     At 20:27:15 Schneider moves a chair next to the left cell door located and places a sheet on the chair, then she makes a fifth phone call, which appears to last from 20:28:01 to 20:34:51.

41.     After she gets off the phone, Schneider throws the sheet back into the left cell and sits in a chair.

42.     At 20:35:38 Schneider rings the buzzer on the common area wall and then sits back down in the chair near the left cell.

43.     From 20:41:40-20:47:46, Schneider goes in and out of the left cell.

44.     At 21:10:33 Schneider crouches down by the main door and appears to be talking through the slot in the door.

45.     At 21:10:57 Schneider bangs on the wall of the common area while crouching down by the main door.

46.     At 21:11:07 Schneider stands up and walks in and out of the left cell.

47.     At 21:13:00 Schneider crouches down by the main door again and appears to be talking through the slot. She then stands up and enters the left cell.

48.     From 21:16:11-21:16:45 Schneider becomes visible again and stands in the doorway with a sheet in hand. She spins the sheet, ties a knot with it and places the sheet on the chair, which she then moves near the left cell door.

49.     From 21:17:22-21:18:25 Schneider works with the sheet near the doorway of the left cell.

50.     From 21:18:30-28:18:58 Schneider draws on the door frame and on the wall of the common area.

51.     At 21:19:12 Schneider stands on the chair, which she had placed near the open left cell door. She has a sheet in her hands.

52.     Schneider holds the sheet up to the automatic door closing mechanism near the top of the door.

53.     Schneider then gets down off the chair and brings the sheet with her into the left cell.

54.     At 21:24:46 Schneider moves the chair away from the left cell door and sits in the chair.

55.     At 21:36:57 Schneider walks back into the left cell with the sheet.

56.     At 21:37:16 Schneider comes out of the left cell with the sheet around her neck and a pillow in hand.

57.     She places the pillow on the chair and moves the chair back under the automatic door closing mechanism of the left cell door that she previously tied open.

58.     At 21:37:30 Schneider gets onto the chair that she moved under the tied-open left cell door and ties the sheet from around her neck onto the automatic door closing mechanism near the top of the door.

59.     At 21:38:45, after standing on the chair for over a minute and more than two hours after being locked in this area, Schneider kicks the chair out from under her.

60.     Schneider hangs from the automatic door closing mechanism for an additional approximately 14 minutes.

61.     Schneider struggles and moves for an extended period of time during these 14 minutes.

62.     At approximately 9:52 p.m. on March 25, 2014, A. Jespersen reportedly looked into the "F Block" area to check on Schneider and saw her hanging by a bed sheet in F Block.  This was approximately an hour and forty-six minutes after the individual opened the F Block door to cells 1 and 2.

63.     A. Jespersen reportedly alerted other Koochiching County Jail personnel and International Falls police officer Perryn Hedlund, who was also at the Jail that night, that Schneider was hanging in F Block.

64.     Eventually, Piekarski, who had the F Block key, unlocked the main door to the F Block common area where Schneider was being held.

8

65.     Upon information and belief, at 21:52:47 Defendants A. Jespersen and Piekarski, Koochiching County Jail staff and International Falls police officer Hedlund enter the common area.

66.     Schneider did not move and was completely suspended above the Jail floor.

67.     Officer Hedlund rushed in, supported Schneider's body, cut the bed sheet with his knife and lowered her to the ground.

68.     Schneider's lips were blue and officer Hedlund could not detect a pulse.

69.     Officer Hedlund then cut the bed sheet off of Schneider's neck and CPR was initiated.

70.     CPR was continued until paramedics arrived.

71.     Schneider was transported to Rainy Lake Medical Center ("RLMC") at approximately 10:09 p.m.

72.     At RLMC at approximately 10:30 p.m. on March 25th, 2014, Schneider's blood alcohol was .175.

73.     Schneider was air lifted from RLMC to Essentia Health Center in Duluth, Minnesota, where she later died on March 30, 2014.

74.     Dr. Roberta Zimmerman, a Medical Examiner of Saint Louis County Minnesota, determined Schneider's cause of death was secondary to ligature compression of her vasculature and airways.  The manner of death was suicide.

75.     Schneider's toxicology screen conducted during her autopsy was positive for only for Benzodiazepines, i.e., lorazepam and midazolam, all of which are medications used to treat anxiety.

9

## DEFENDANTS IGNORE PRIOR KNOWLEDGE REGARDING SCHNEIDER'S MENTAL HEALTH

76.     Defendants had previously been alerted to Schneider's mental health issues and her risk of suicide.

77.     On multiple occasions prior to her March 25, 2014 incarceration, Schneider had self-reported to Koochiching County Jail personnel and/or had been examined at Koochiching County Jail as: 1) having received hospital treatment for emotional and/or mental health issues; 2) having been diagnosed with depression and anxiety; 3) having been prescribed medications for depression and anxiety; 4) having thoughts of suicide; and 5) having previously attempting suicide.

78.     Despite this history at the Jail, no initial custody assessment was performed upon Schneider's admission to the Jail on March 25, 2014.

79.     No medical, mental health or addiction questionnaire was performed upon Schneider's admission.

80.     No steps were taken to assess Schneider's suicidal tendencies.

81.     No steps were taken to prevent Schneider's ideations, thoughts and/or plan to commit suicide.

82.     Upon information and belief, no complete search of Schneider was done to assure she was not bringing anything into the Jail.

83.     Piekarski spent only seven minutes with Schneider from the time she checked in at the Jail to the time she was left in the common area of F Block outside of cells 1 and 2.

84.     In this area, Schneider had unfettered, free access to a large general area and two cells, all of which should have been obvious to the correctional officers assigned to monitor the video feeds from that area of the Jail.

85.     Schneider was able to tie a cell door with an automatic door closer open.

86.     Within this F Block area were numerous objects she could use to commit suicide, i.e., bedding, a plastic sheet, chairs, towels, automatic door closures and window bars.

87.     Schneider was left alone in this area and, from the surveillance video, was only checked on one time prior to being found hanging in her cell approximately two and a half hours after she entered the F Block.

88.     Defendants knew from previous experience or should have known – had any intake assessment been performed this time – that Schneider had a serious and obvious medical need in the form of severe mental illness upon her incarceration at the Koochiching County Jail on March 25, 2014.

89.     Defendants knew from previous experience or should have known – had any intake assessment been performed this time – that Schneider had previously received treatment for severe mental illness.

90.     Defendants knew from previous experience or should have known – had any intake assessment been performed this time – that Schneider had been prescribed antidepressant medication and medication for anxiety.

91.     Defendants knew from previous experience or should have known – had any intake assessment been performed this time – that Schneider had previously attempted suicide.

92.     Defendants knew from previous experience or should have known – had any intake assessment been performed this time – that Schneider had ideations, thoughts and/or plans of suicide upon her incarceration at the Koochiching County Jail on March 25, 2014.

## THE MINNESOTA DEPARTMENT OF CORRECTIONS' INVESTIGATION OF THE DEATH OF KATHRYN MARIE SCHNEIDER

93.     The Minnesota Department of Corrections ("DOC") investigated Schneider's suicide at the Koochiching County Jail.  The report is attached hereto as Exhibit B.

94.     The DOC concluded "there were several violations of the Chapter 2911 rules as well as Koochiching County Jail policy."

95.     In the approximately two and a half hours before Schneider was found hanging in the cell area, seven well-being checks were logged.  Yet, upon review of the video footage, the DOC concluded that the Defendants were "not completing well-being checks appropriately."

96.     The Defendants "simply scanned the sensor on the outside of the housing unit but did not enter the cellblock nor look inside the cellblock window to visually observe Ms. Schneider" – a violation of Chapter 2911.5000 subp. 5 and the Koochiching County Jail policy and procedure manual that both require all inmates be personal observed at least every 30 minutes

97.     The DOC has found that the Koochiching County Jail has been out of compliance with the rules and policies regarding well-being checks during the DOC's last three inspections of the facility.

98.     Further, a review of all submitted special incidents from 2011 illustrated on average 4-5 well-being checks in excess of one hour on twenty separate incidents.

99.     The DOC determined: "[a]ctions taken to correct this deficiency have been inadequate for at least the past 3 years."

100.     Further, the DOC provided:

> It is apparent that facility staff need significant re-training with regard to proper well-being checks as well as several other operational issues observed in past inspections and [the DOC's] recent visit to the facility…Department administration must take corrective action to ensure staff compliance with department policies and applicable jail rules.  This includes holding supervisors and line staff accountable for their role in operating within these policies and rule requirements.

101.     The DOC also concluded that Schneider "was not booked in upon entry to the facility" in violation of Chapter 2911 rules and the Koochiching County Jail policy.

102.     Simply changing Schneider into facility clothing and placing her into a housing unit did not meet the booking requirements.

103.     No initial medical screening and no mental health screening or classification were completed upon Schneider's check in to the Koochiching County Jail on March 25, 2014.

104.     Chapter 2911.5800 subp. 6 requires a medical screening to be performed and recorded on all inmates upon admission to the facility.

105.    During the medical screening, inmates are asked several questions regarding any plan, desire or feelings about suicide.

106.    These questions are required to be asked of each inmate, but this was not done by the Defendants upon Schneider's admission to the Koochiching County Jail.

107.    The Defendants wholly failed to assess Schneider's mental health status upon intake to Koochiching County Jail on March 25, 2014.

108.    Further, Defendants failed to take any precautions to ensure Schneider would not have the means and opportunity to commit suicide during her incarceration at the Koochiching County Jail on March 25, 2014.

109.    Schneider incurred special medical damages prior to her death, including but not limited to ambulance and EMS charges, medical bills from the RLMC and physicians associated therewith, medical air transport charges, and medical bills from the Essentia Health Center and its physicians.

110.    Schneider suffered a loss of economic opportunity.

111.    Schneider suffered pain and suffering from the time her serious and obvious medical condition was ignored until the time of her death.

112.    Schneider suffered the loss of the enjoyment of her life.

113.    Plaintiffs are entitled to recover these damages for Schneider.

## COUNT ONE

### 42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS
*Plaintiffs v. Defendant Sheriff Brian Jespersen*

114.    Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

115.    Severe mental illness and suicidal ideation are serious medical needs.

116.    Defendant Sheriff Jespersen had a duty to provide for the safety and general well-being of Schneider, including protecting her from herself, as an inmate at the Koochiching County Jail.

117.    Defendant Sheriff Jespersen, under the color of state law, acted with deliberate indifference to Schneider's life-threatening medical needs and her serious risk of suicide during her confinement at the Koochiching County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

118.    Defendant Sheriff Jespersen, under the color of state law, knew of and disregarded an obvious and serious risk to Schneider's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

119.    Defendant Sheriff Jespersen has repeatedly and publically affirmed that the procedures put in place by him and utilized under his command with regard to Schneider were proper, not violations at all, and that no changes would be made at the Jail as a result.

120.    Schneider died as a direct and proximate result of Defendant Sheriff Jespersen's acts and omissions, and Plaintiffs were thereby damaged in the form described above and in an amount as yet to be determined.

121.    Punitive damages are available against Defendant A. Jespersen and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

122.    Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT TWO

### CIVIL RIGHTS VIOLATIONS – SUPERVISORY LIABILITY
### *Plaintiffs v. Defendant Sheriff Brian Jespersen*

123.    Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

124.    Severe mental illness and suicidal ideation are serious medical needs.

125.    Defendant Sheriff Brian Jespersen had a duty to provide for the safety and general well-being of Schneider, including protecting her from herself, as an inmate at Koochiching County Jail.

126.    Defendant Sheriff Brian Jespersen, as the supervisor of the Koochiching County Jail personnel, with callous or reckless indifference to the rights of inmates, failed to properly supervise, instruct and train correctional staff in the recognition of inmates with serious mental health needs, inmates who are suicidal, the monitoring of inmates with mental health issues and in the prevention of suicide in correctional facilities.

127.    Defendant Sheriff Brain Jespersen, under the color of state law, acted with deliberate indifference to Schneider's life-threatening medical needs and serious risk of suicide during her confinement at the Koochiching County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

128.    Defendant Sheriff Brian Jespersen subjected Schneider to these deprivations of her rights either maliciously or by acting with reckless disregard for whether Schneider's rights would be violated by his actions.

129.    Schneider died as a direct and proximate result of Defendant Sheriff Brian Jespersen's acts and omissions, and Plaintiffs were thereby damaged in the form described above and in an amount as yet to be determined.

130.    Punitive damages are available against Defendant Sheriff Brian Jespersen and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

131.    Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT THREE

### 42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS
### *Plaintiffs v. Defendant Andy Jespersen*

132.    Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

133.    Severe mental illness and suicidal ideation are serious medical needs.

134.   Defendant A. Jespersen had a duty to provide for the safety and general well-being of Schneider, including protecting her from herself, as an inmate at the Koochiching County Jail.

135.   Defendant A. Jespersen, under the color of state law, acted with deliberate indifference to Schneider's life-threatening medical needs and her serious risk of suicide during her confinement at the Koochiching County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

136.   Defendant A. Jespersen, under the color of state law, knew of and disregarded an obvious and serious risk to Schneider's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

137.   Defendant A. Jespersen subjected Schneider to these deprivations of her rights either maliciously or by acting with reckless disregard for whether Schneider's rights would be violated by Defendant A. Jespersen's actions.

138.   Schneider died as a direct and proximate result of Defendant A. Jespersen's acts and omissions, and Plaintiffs were thereby damaged in the form described above and in an amount as yet to be determined.

139.   Punitive damages are available against Defendant A. Jespersen and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

140.    Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT FOUR

### 42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS
### *Plaintiffs v. Defendant Dawn Piekarski*

141.    Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

142.    Severe mental illness and suicidal ideation are serious medical needs.

143.    Defendant Piekarski had a duty to provide for the safety and general well-being of Schneider, including protecting her from herself, as an inmate at the Koochiching County Jail.

144.    Defendant Piekarski, under the color of state law, acted with deliberate indifference to Schneider's life-threatening medical needs and her serious risk of suicide during her confinement at the Koochiching County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

145.    Defendant Piekarski, under the color of state law, knew of and disregarded an obvious and serious risk to Schneider's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

146.    Defendant Piekarski subjected Schneider to these deprivations of her rights either maliciously or by acting with reckless disregard for whether Schneider's rights would be violated by Defendant Piekarski's actions.

19

147.    Schneider died as a direct and proximate result of Defendant Piekarski's acts and omissions, and Plaintiffs were thereby damaged in the form described above and in an amount as yet to be determined.

148.    Punitive damages are available against Defendant A. Jespersen and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

149.    Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT FIVE

### 42 U.S.C. § 1983
### EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS
### *Plaintiffs v. Defendants John Doe 1-2*

150.    Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

151.    Severe mental illness and suicidal ideation are serious medical needs.

152.    Defendants John Does 1-2 had a duty to provide for the safety and general well-being of Schneider, including protecting her from herself, as an inmate at the Koochiching County Jail.

153.    Defendants John Does 1-2 failed to complete well-being checks in accordance with Chapter 2911 rules and the policies and procedures of Koochiching County.

154.    Defendants John Does 1-2, under the color of state law, acted with deliberate indifference to Schneider's life-threatening medical needs and her serious risk of suicide

during her confinement at the Koochiching County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

155.    Defendants John Does 1-2, under the color of state law, knew of and disregarded an obvious and serious risk to Schneider's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

156.    Defendants John Does 1-2 subjected Schneider to these deprivations of her rights either maliciously or by acting with reckless disregard for whether Schneider's rights would be violated by Defendants John Does 1-2 actions.

157.    Schneider died as a direct and proximate result of Defendants John Does 1-2 acts and omissions, and Plaintiffs were thereby damaged in the form described above and in an amount as yet to be determined.

158.    Punitive damages are available against Defendants John Does 1-2 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

159.    Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT SIX

### CIVIL RIGHTS VIOLATIONS
### *Plaintiffs v. Defendants John Does 3-4*

160.    Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

161.    Severe mental illness and suicidal ideation are serious medical needs.

162.    Defendants John Does 3-4 had a duty to provide for the safety and general well-being of Schneider, including protecting her from herself, as an inmate at the Koochiching County Jail.

163.    Defendants John Does 3-4 observed and ignored Schneider's behavior on the video feed from the cameras in the Koochiching County Jail, which indicated not only a serious and obvious medical need, but clear breaches of correctional security and protocol.

164.    Defendants John Does 3-4, under the color of state law, acted with deliberate indifference to Schneider's life-threatening medical needs and her serious risk of suicide during her confinement at the Koochiching County Jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

165.    Defendants John Does 3-4, under the color of state law, knew of and disregarded an obvious and serious risk to Schneider's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

166.   Defendants John Does 3-4 subjected Schneider to these deprivations of her rights either maliciously or by acting with reckless disregard for whether Schneider's rights would be violated by Defendants John Does 3-4 actions.

167.   Schneider died as a direct and proximate result of Defendants John Does 3-4 acts and omissions, and Plaintiffs were thereby damaged in the form described above and in an amount as yet to be determined.

168.   Punitive damages are available against Defendants John Does 3-4 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. Ann. § 549.20.

169.   Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT SEVEN

### CIVIL RIGHTS VIOLATIONS
### MONELL V. DEP'T OF SOCIAL SERVICES
### *Plaintiffs v. Koochiching County*

170.   Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

143.   Before March 25, 2014, Koochiching County, with deliberate indifference to the rights of inmates at the Koochiching County Jail, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of its correctional officers, including the individual Defendants, of failing to provide for the safety and general well-being of inmates and failing to protect inmates from themselves and/or risks of suicide.

23

144.     Schneider's wrongful death and the violation of her civil rights was directly and proximately caused by the aforementioned acts and omissions and by Koochiching County's customs, patterns, and/or practices, and Koochiching County is thereby liable in an amount as yet to be determined.

145.     Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT EIGHT

### FAILURE TO TRAIN UNDER
### CITY OF CANTON V. HARRIS
### *Plaintiffs v. Koochiching County*

146.     Plaintiffs reallege and incorporate by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

147.     Koochiching County, with deliberate indifference to inmates at the Koochiching County Jail, failed to properly train correctional staff and failed to adopt, implement or require adherence to appropriate policies to provide timely and appropriate care for inmates with serious mental illness.

148.     Defendant Koochiching County, by such conduct, demonstrated deliberate indifference and a protracted failure to care for the safety of Schneider who had an obvious and serious medical need in the form of a severe mental health crisis.

149.     Schneider's wrongful death and the violation of her civil rights was directly and proximately caused by the aforementioned acts and omissions and by Koochiching County's customs, patterns, and/or practices, and Koochiching County is thereby liable in an amount as yet to be determined.

150.    Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Casey Kucera and John Schneider, as co-trustees for the next-of-kin of Kathryn Marie Schneider pray for judgment against Defendants as follows:

1.      That this Court find that the Defendants committed acts and omissions constituting violations of the Eighth and Fourteenth Amendments to the United States Constitution, actionable under 42 U.S.C. § 1983;

2.      As to Count I, a money judgment against Defendant Sheriff Brian Jespersen for compensatory damages in the amount of $3,000,000 and punitive damages in the amount of $3,000,000, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

3.      As to Count II, a money judgment against Defendant Sheriff Brian Jespersen for compensatory damages in the amount of $3,000,000 and punitive damages in the amount of $3,000,000, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

4.      As to Count III, a money judgment against Defendant Andy Jespersen for compensatory damages in the amount of $3,000,000 and punitive damages in the amount of $3,000,000, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

5.      As to Count VI, a money judgment against Defendant Dawn Piekarski for compensatory damages in the amount of $3,000,000 and punitive damages in the amount of

$3,000,000, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

6.      As to Count V, a money judgment against Defendants John Does 1-2 for compensatory damages in the amount of $3,000,000 and punitive damages in the amount of $3,000,000, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

7.      As to Count VI a money judgment against Defendants John Does 3-4 for compensatory damages in the amount of $3,000,000 and punitive damages in the amount of $3,000,000, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest.

8.      As to Count VII, a money judgment against Koochiching County for compensatory damages in the amount of $3,000,000, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest

9.      As to Count VIII, a money judgment against Koochiching County for compensatory damages in the amount of $3,000,000, together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest

10.      For an order mandating changes in the policies and procedures of the Koochiching County Jail requiring, among other things, policy/training measures in the recognition of serious mental illness and suicidal ideation in correctional facilities and in the prevention of suicide among inmates in correctional facilities; and

11.      For such other and further relief as this Court may deem just and equitable.

GASKINS BENNETT BIRRELL SCHUPP L.L.P.

Date: 10/13/14

Robert Bennett, #6713
Andrew J. Noel, #322118
Kathryn H. Bennett, #0392087
333 South Seventh Street, #3000
Minneapolis, MN 55402
Telephone: 612-333-9500
rbennett@gaskinsbennett.com
anoel@gaskinsbennett.com
kbennett@gaskinsbennett.com

AND

SIEBEN CAREY LTD.

Jeffrey M. Montpetit, #0291249
901 Marquette Avenue, #500
Minneapolis, MN 55402
Telephone: 612-333-4500
*Attorneys for Plaintiff*